IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

Christopher Love Williams,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Civil Action No. 6:12-1590-MGL-KFM
⠀⠀⠀⠀⠀⠀⠀⠀⠀Petitioner,⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀**REPORT OF MAGISTRATE JUDGE**
⠀⠀⠀⠀⠀vs.⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
Warden McKie,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀Respondent.⠀)
_____)

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

### BACKGROUND

The petitioner is currently confined at Kirkland Correctional Institution in the South Carolina Department of Corrections ("SCDC"). He was indicted in Colleton County in March 2001 for armed robbery and murder. Sean Thornton represented the petitioner. The attorney for the State was T. K. Alexander of the 14th Circuit Solicitor's Office. On January 29, 2002, the petitioner pled guilty to the indictments. He was subsequently sentenced to concurrent sentences of 35 years imprisonment for murder and 20 years on the armed robbery charge.

The petitioner appealed his conviction and sentence. Wanda H. Haile of the South Carolina Office of Indigent Defense filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967) and a petition to be relieved as counsel on September 18, 2002. In her brief, appellate counsel stated that the appeal was without merit and that she had briefed

the arguable issue that "[T]he lower court erred in accepting appellant's guilty pleas without advising him of the sentencing consequences . . ." (*Anders* brief 3). The petitioner filed a *pro se* brief on January 7, 2003, raising the following ground:

> Did the trial judge erred in accepting the appellant guilty plea without having a due process of fundamental fairness hearing under the statutory requirement, under 44-53-430, base on the authority of *State v. Blair*, before accepting the appellant guilty plea, also base on counsels stipulation.

(*Pro Se* brief 3). Subsequently, the South Carolina Court of Appeals dismissed the petitioner's appeal and granted counsel's request to be relieved pursuant to *Anders*. *State v. Williams*, Op. No. 2003-UP-280 (S.C. Ct. App. filed April 17, 2003). The Remittitur was issued on May 20, 2003. The petitioner did not seek rehearing before the South Carolina Court of Appeals or certiorari to either the South Carolina Supreme Court or the United States Supreme Court.

The petitioner made an application for post-conviction relief ("PCR") in Colleton County on February 20, 2004 (App. 47-50). *Williams v. State*, 2004-COP-15-208. The respondent made its return on March 8, 2005 (App. 51-57). An evidentiary hearing was held on September 4, 2009, before The Honorable Alexander Macaulay. The petitioner was present at the hearing and was represented by Pamela Polzin. Matthew J. Friedman, of the South Carolina Attorney General's Office, represented the respondent.

The petitioner testified on his own behalf at the PCR hearing. His plea counsel, Sean Thornton, also testified. The PCR court had before it the guilty plea transcript, the records of the Colleton County Clerk of Court, the petitioner's records from SCDC, direct appeal records, the PCR application and amended petition, and the respondent's return thereto. The petitioner alleged he was being held in custody unlawfully for the following reasons at the outset of the PCR hearing:

1. Ineffective assistance of counsel in that counsel

2

a. Failed to investigate.

    1. Counsel did not investigate any possible defenses.

    2. He failed to investigate the totality of the circumstances surrounding his initial seizure by the police had been taken into custody.

    3. On three different occasions he was interrogated and questioned by the police without a warrant.

b. Gave Applicant inaccurate information.

    1. He claims that he was misinformed regarding the essential elements of murder. He did not understand the elements of intent and malice correctly.

c. Did not review evidence with Applicant.

    1. Counsel did not show him the videotape confession or provide him, with copies of the evidence.

d. Did not consult with Applicant about the defense.

e. Counsel should not have waived Applicant's right to cross-examine psychologist and psychiatrist who prepared the competency report (Dr. Pamela Crawford, Dr. Margaret Melikian, Dr. Camilla Tezza). He asserts that his counsel never consulted with him about that matter.

f. Ineffective Assistance of Counsel and Prosecutorial Misconduct in that they failed to quash indictment. He claimed that the grand jury received the testimony of one person, Investigator Lesley Bryant of the Colleton County Solicitor's Office. He claims his attorney should have investigated the proceedings because they should have had numerous witnesses testify.

3

2. Involuntary guilty plea.

   a. Petitioner believed he would get a deal of 30 years possible jail time only, but if taken to trial he would get a life sentence because of his confession. He claims he would not have pled guilty had he known that the potential sentence was for a natural life rather than just thirty years.

   b. He claims his attorney was ineffective because he recommended a guilty plea on the basis of inaccurate information with regard to intent as Petitioner believes that he did not understand how intent could be found from firing the weapon.

   c. He claims his plea was involuntary because his colloquy with the plea judge was flawed. He states that the judge did not ask Petitioner to recite the facts and basis for the plea, that he did not explain the waiver of constitutional rights, and the judge did not explain all possible sentences to ensure he understood the consequences of the plea, including thirty years to life. He claims that had he known that he was facing a sentence of more than 30 years and possibly life, he would not have pled guilty.

3. Subject matter jurisdiction.

   a. He claims that when the solicitor recited the facts, he constructively amended the indictment as the time of the alleged offense from on January 30, 2001 but the actual indictment said on or about January 30, 2001. The solicitor quoted a little after 2:00 on January 30th of 2001. The solicitor changed the time from the indictment during his recitation of the facts which he claims deprived the court of jurisdiction.

4

(App. 76-80). During the hearing, an amended *pro se* petition was presented (App. 61-62, 122-33). At the conclusion of the hearing, the court denied relief on the record (App. 113-20). On October 29, 2009, the PCR court entered its order of dismissal (App. 136-42).

On February 28, 2011, the petitioner appealed the denial of PCR by filing a petition pursuant to *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988) for writ of certiorari with the South Carolina Supreme Court. He was represented by Robert M. Pachak, Appellate Defender of the South Carolina Division of Appellate Defense. The petitioner's sole arguable claim was "whether defense counsel was ineffective in giving petitioner incorrect sentencing advice?" (*Johnson* pet. 2). On April 6, 2012, after review of the entire record pursuant to *Johnson*, the South Carolina Supreme Court entered its order denying the petition and granting counsel's request to be relieved. The remittitur was issued on April 24, 2012.

## UNDERLYING CASE FACTS

On January 30, 2001, Walter Burns was found by employees of a cab company in his cab that was located in a ditch near Walterboro, South Carolina. The car was nose down in the ditch, and Mr. Burns was slumped over the steering wheel. He had been shot once in the back of the head and once in his upper back with a small caliber pistol (App. 24). During the subsequent investigation of the crime by the Colleton County Sheriff's Department, a spiral notebook was found in the cab containing addresses of Mr. Burns' cab fares. One of the last entries was the petitioner's address. Sheriff's deputies traced the petitioner's whereabouts from the Winn-Dixie to Burger King and talked to witnesses who had seen the petitioner in the cab. Another cab driver, Darrell Green, had also seen the petitioner in Mr. Burns' cab earlier that day (App. 25). Law enforcement officers were ultimately led to the petitioner based on statements of more witnesses who informed them that the petitioner had gone to a store called Exit 57. The petitioner purchased CDs at Exit 57 with a large number of one dollar bills (App. 25).

Consequently, after being advised of his *Miranda* rights, the petitioner was interviewed by the Sheriff's Department and gave a videotaped statement. In the statement, he talked about how he and some other young men had planned how they were going to rob people and use the stolen money (App. 25-26). He described how he shot the victim and took his money. The petitioner said he had taken the money from the victim's fanny pack, which was found by law enforcement open in the victim's lap. The petitioner estimated that he had taken $91.00 from the victim. The petitioner also recounted how at first he had hidden the .32 caliber revolver in his home and then moved it across the highway from his home. Officers subsequently recovered the revolver in an abandoned home across the street from the petitioner's house (App. 26). The bullets were recovered from the victim's body and analyzed by South Carolina Law Enforcement Division ("SLED"). After a comparison study, they were found to be consistent with ammunition capable of being fired from a .32 caliber revolver (App. 27).

### FEDERAL HABEAS ACTION

In his *pro se* petition for writ of habeas corpus now before this court, the petitioner makes the following claims of error:

I. Ineffective Assistance of Counsel: failure to investigate.

A. Failed to investigate/test prosecutions case against me or any evidence of case.

1. Counsel did not investigate any possible defenses.
2. He failed to investigate the totality of the circumstances surrounding his warrantless seizure by the police had been taken into custody which led to 3 statements and a confession elicited after an 8 ½ hour incognito interrogation.
3. On three different occasions he was interrogated and questioned by the police without a warrant.

6

II. Ineffective Assistance of Counsel: misinformation /inaccurate information.

A. Misinformed to elements essential in murder charge dealing with intent and malice and aforethought. Not at all informed of time and place. Told to get a deal of 30 years.

1. He claims that he was misinformed regarding the essential elements of murder. He did not understand the elements of intent and malice correctly.

a. He asserts that counsel Thornton advised him that the elements of intent and malice could be proven by the prosecution from the weapon and that the victim was shot two times.

2. He claims that counsel told him that counsel could get Petitioner a deal for 30 years, but if taken to trial he would get a natural life sentence because of his confession.

III. Ineffective assistance of counsel: waiving petitioner's rights.

A. Petitioner's rights waived at plea hearing without being consulted by counsel and judge. See pages 5-9.

1. Counsel at no time consulted with Petitioner about his right to waived a Blair competency to stand trial hearing.

2. Counsel should not have waived Applicant's right to cross-examine psychologist and psychiatrist who prepared the competency report (Dr. Pamela Crawford, Dr. Margaret Melikian, Dr. Tezza). He asserts that his counsel never consulted with him about that matter.

IV. Prosecutorial misconduct / governmental misconduct - ineffective assistance of counsel - failure to quash indictment.

A. Investigator appears as the sole witness before a grand jury. See attached pages 5-9.

1. He claimed that the grand jury received the testimony of one person, Investigator Lesley Bryant of the Colleton County Solicitor's Office. He claims his attorney should have investigated the proceedings because they should have had numerous witnesses testify.

2. He asserts that there is a 1993 opinion of the South Carolina Supreme Court that explicitly prohibits the state representative from being the sole witness before the grand jury as a state created right.

V. Involuntary guilty plea/fatally flawed colloquy.

A. Every response given was either a yes or no answer in the plea colloquy. He asserts that this does not show an expressed understanding of how actions coincide with mens rea.

1. He states that the judge did not ask Petitioner to recite the facts surrounding the crime and basis for the plea, that he did not explain the waiver of constitutional rights, relinquishment of his right to make a closing argument and the judge did not explain all possible sentences to ensure he understood the consequences of the plea, including thirty years to life. His right to testify and make argument at his plea was taken without any questioning.

2. He claims that he was not questioned about the essential elements of time nor place not his understanding of malice aforethought or intent.

8

3. He claims that had he known that he was facing a sentence of more than 30 years and possibly life, he would not have pled guilty.

VI. Subject matter jurisdiction/orally/verbal, amended indictment.

A. He claims that when the solicitor recited the facts, he constructively amended the indictment as the time of the alleged offense from on January 30, 2001, but the actual indictment said on or about January 30, 2001. The solicitor quoted a little after 2:00 on January 30th of 2001. The solicitor changed the time from the indictment during his recitation of the facts, which he claims deprived the court of jurisdiction.

(Pet. 5-22).

On July 12, 2012, the respondent filed a motion for summary judgment. By order filed on July 13, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed his response in opposition on August 21, 2012, and filed additional documents in support of his response on September 11, 2012, and November 29, 2012.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining

9

whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

10

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

The respondent notes that the allegations in the petitioner's federal petition were raised by the petitioner and addressed by the PCR court and in the PCR appeal. Accordingly, the petitioner has exhausted his remedies in state court. Furthermore, the

11

respondent states that the petition is timely (m.s.j. 9).  Accordingly, the petitioner's grounds for relief will be addressed on the merits.

### Ground One

In his first ground, the petitioner contends that his counsel was ineffective because he failed to investigate any possible defenses or test the prosecution's case. Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687.  To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S. 759, 770 (1970)).  There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case.  *Id.* at 690. With regard to guilty pleas, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The review of ineffective assistance of counsel claims in federal habeas is centered upon whether the state court decision was reasonable. 28 U.S.C. § 2254(d). Moreover, each step requires deference – deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and when the two apply in tandem, review is "doubly"

so, *Knowles*, 556 U.S., at ——, 129 S.Ct. at 1420.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ——, 129 S.Ct. at 1420.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S.Ct. 770, 788 (2011).

This issue was raised in the PCR action and denied in the oral order and written order and was raised in the petitioner's *pro se Johnson* petition (App. 140; *see also* App. 114-15).  As stated on the record at the plea by Assistant Solicitor Alexander, investigation of this case and the petitioner's own statement placed him in the cab with the victim, in possession of the stolen money, and in possession of the murder weapon. Furthermore, the petitioner agreed to these facts at his plea hearing.  During the plea hearing, the petitioner's attorney requested that the court sentence the petitioner to the minimum 30 year sentence and to sentence him to concurrent time.  Counsel Thornton noted that as a client, the petitioner had never been a problem and had been remorseful the whole time (App. 31).  He stated that the petitioner was 19 years old and was close to 18 when he committed the crime.  He stated that the petitioner comes from a good family, and he had also accepted responsibility for his actions.  In arguing for a lesser sentence for his client, counsel noted that with the minimum sentence the petitioner would not be released until he was almost 50 years old (App. 32-33).  The family members made similar requests for the minimum sentence (App. 33- 37), and the petitioner also stated that he was sorry for his actions (App. 44).

Counsel Thornton testified at the PCR hearing that he and the petitioner discussed potential defenses, but there were none that he was aware of based on his examination of the case (App.100).  Specifically, he noted that the investigation revealed

13

eyewitnesses who placed the petitioner with the victim, and witnesses who saw him with the bills being used later to purchase CDs (App. 100). Furthermore, he stated that he had reviewed the petitioner's statements during which he was repeatedly Mirandized. He noted that in an earlier statement, the petitioner admitted being present at the shooting, but placed the blame on another individual named Derrick, but later admitted he had shot the victim, advised the police where the weapon was located, and where his shoes were located (App. 100-101). He noted that the gun was test fired five times and compared with the evidence and that the gun was in working order. Counsel declared that he had investigated the case, but that there were no real defenses (App.101).

The PCR court concluded that the petitioner had not presented any evidence of any action or failure on counsel's part to investigate (App. 114-15). In particular, the PCR court noted that there was still no defense presented or suggested that counsel should have investigated (App. 114, 140).

In his federal habeas petition, the petitioner contends that his counsel's failure to investigate included a failure to recognize that he was just under 18 years old at the time without prior law enforcement problems (pet. 15). This is contradicted by his lawyer's testimony at PCR where counsel stated that he had represented the petitioner previously and had worked out a deal on an assault charge where the petitioner only had to go to an anger management class as punishment for the charge (App. 105-06).

The petitioner also reiterates his complaints about an eight and half hour interrogation setting and that he was not free to leave (pet. 15; *see* App. 82-84). At the PCR hearing, counsel stated that he had reviewed the statements and viewed the video and had determined that there was no coercion presented in the interview by the questioning of the officers. Counsel further stated that he had reviewed the files with the petitioner. Although he did not play the videotape confession to him, they went over what was on the video. Counsel testified that the petitioner did not ask to watch the video (App.

14

103-106).  Counsel stated that he had access to all the Solicitor's files and anything in the Sheriff's Department files (App. 102-103).  Counsel stated that he met with the petitioner at least five times in preparation for the trial and/or plea (App.107).  Counsel stated that during the confession, the petitioner appeared calm and did not appear threatened or coerced (App. 108).  The video revealed that there were no loud voices from the investigating officer, Lt. Jack Watson, and there was no apparent intimidation. Counsel stated that the petitioner never informed him of any intimidation or coercion.  Contrary to the claims of the petitioner at the PCR hearing, counsel Thornton stated that the petitioner never advised him that he had asked for a lawyer during his interviews.  He stated that if he had, he would have sought to challenge the statement.  However, he pointed out that there were a series of signed waivers and that the petitioner never asked for an attorney during the video interview.  Essentially, the petitioner's lawyer did see any benefit to his client in challenging the statements in a *Jackson v. Denno* hearing (App. 109-10).

The PCR court found that the petitioner's testimony was not credible and his counsel's testimony was credible (App. 140).  This finding is entitled to deference.[1]  The petitioner has failed to show that counsel was deficient in failing to do a reasonable investigation.  As the PCR court noted, the petitioner failed to suggest any defense that counsel should have investigated. Accordingly, the petitioner has not met his burden of showing that the PCR court applied the *Strickland* test unreasonably, and therefore this claim should be denied.

### Ground Two

In Ground Two of his petition, the petitioner claims that he was misinformed about the elements of murder related to intent and malice aforethought and asserts that he

---

[1] Witness credibility is a "factual determination" for purposes of Section 2254(e)(1). *Wilson v. Ozmint*, 352 F.3d 847, 858 (4th Cir. 2003).  "[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear." *Cagle v. Branker*, 520 F.3d 320, 324-25 (4th Cir. 2008)(citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).

was led to believe that he had a deal for a 30 year sentence.  This claim was also raised and rejected by the PCR court.  Specifically, the PCR court concluded that the petitioner did not meet his burden of proof on the issue (App. 116-17).  The PCR court  found that at the plea the petitioner was advised of the crimes and the potential sentences  of 30 years to life imprisonment on the murder charge and 30 years imprisonment for armed robbery and that the only agreement was for a recommendation for concurrent sentences (App. 116-117 (citing App. 13-15)).  The court pointed out that the petitioner had agreed at the plea that no promises had been made to him concerning sentencing (App. 117 (citing App. 19-20).  The PCR court further concluded in the written order that the decision to plead guilty was freely and voluntarily entered (App. 140).

The court found that counsel's testimony at the hearing was credible and that counsel discussed with the petitioner the elements of the charges against him (App. 140). Counsel Thornton testified that he had discussed the elements of the charges with the petitioner and that he had told the petitioner that murder was the intentional killing of another with malice aforethought (App. 99-100).  It was also counsel's testimony at PCR that he had informed the petitioner that a jury could assume intent by the victim's multiple gunshot wounds and that the jury could infer malice by the use of a deadly weapon (App. 100).

Counsel's statements concerning the elements of murder are entirely consistent with what a reasonable lawyer should have done in 2002 when a client was facing murder charges.  Had the case gone to trial at the time, the petitioner would have received similar instructions on murder and malice aforethought from a trial court.  "Murder" is the killing of any person with malice aforethought, either express or implied." S.C. Code Ann. § 16-3-10 (1985). " 'Malice' is the wrongful intent to injure another and indicates a wicked or depraved spirit intent on doing wrong." *State v. Kelsey*, 502 S.E.2d 63, 69 (S.C.

1998) (citation omitted). "In a murder prosecution, malice may be implied[2] if the defendant uses a deadly weapon." *Sellers v. State*, 607 S.E.2d 82, 85 (S.C. 2005) (citing *Kelsey*, 502 S.E.2d at 69). The record in this case shows there was no deficient performance in counsel's discussion of the law with the petitioner.

Further, the record supports the PCR court's finding that counsel properly advised and the petitioner understood the sentencing range for murder and armed robbery (App. 140). At the beginning of the plea hearing, the solicitor declared "the only recommendation of the state, your honor, being that he be given a concurrent sentence" (App. 3). Similarly, at the PCR hearing, counsel testified that based upon the strength of the state's case, the agreement was only that the State would recommend concurrent sentences (App. 103). Counsel asked for the 30 year minimum sentence (App. 103; *see also* App. 22-23, 31). Counsel further stated that he informed the petitioner that the minimum sentence for murder was 30 years and the maximum was life and that life meant life (App. 103). He noted that the decision to plead guilty was the petitioner's (App.104). He recalled specifically his last meeting with the petitioner and two or three family members

_____

[2]As noted recently by the Court of Appeals of South Carolina:

Historically, the use of a deadly weapon in a killing created first a presumption, and later a permissive inference, of malice aforethought. *State v. Belcher*, 385 S.C. 597, 602–08, 685 S.E.2d 802, 804–08 (2009). However, currently, "the 'use of a deadly weapon' implied malice instruction has no place in a murder ... prosecution where evidence is presented that would reduce, mitigate, excuse or justify the killing...." *Id.* at 610, 685 S.E.2d at 809. Noting this decision "represent[ed] a clear break from our modern precedent," the *Belcher* court held it would apply to "all cases which [we]re pending on direct review or not yet final where the issue is preserved." *Id*. at 612, 685 S.E.2d at 810.

*State v. Miller*, 725 S.E.2d 724, 727 (S.C. Ct. App. 2012). The petitioner's conviction was final well before the *Belcher* case was decided. Moreover, although the jury instruction was removed from use in this state, the prosecution, then and now, is still allowed to argue and the jury may still conclude that the circumstances of the use of the deadly weapon show malice. *Belcher*, 685 S.E.2d at 810 n.9 ("[W]e neither restrict the State from arguing to the jury for a finding of malice from the use of a deadly weapon, nor restrict a defendant from arguing the absence of malice or the presence of reasonable doubt in this regard. It is axiomatic that some matters appropriate for jury argument are not proper for charging.").

at which time he advised the petitioner that the minimum for murder was 30 years and the maximum was life and he would ask the judge for the minimum sentence (App. 107-108). The 35-year sentence the petitioner ultimately received was within the advice given by counsel, and the petitioner stated on the record that he understood that he was facing up to life imprisonment (App. 14, 23). Thus, the PCR court reasonably found that the counsel's advice to the petitioner was proper.

The petitioner has failed to show the PCR court unreasonably applied United States Supreme Court precedent. Additionally, the petitioner has failed to show by clear and convincing evidence that the PCR court reached an unreasonable factual determination given the evidence and record before the it. Accordingly, this ground should be dismissed with prejudice.

### Ground Three

In his third claim of ineffective assistance of counsel, the petitioner asserts that counsel failed to adequately consult with him concerning waiving his right to a competency hearing and waiving his right to cross-examine the forensic mental health evaluators. This issue was raised and rejected at the state PCR hearing (App. 113, 118, 141).

The record reflects at the outset of the plea that the court was advised that on August 6-7, 2001, the petitioner was evaluated by Dr. Pamela Crawford, Dr. Margaret Melikian, and Dr. Camilla Tezza (App. 3). The State and the defense stipulated to the submission of the evaluation report in lieu of a *Blair*[3] competency hearing (App. 3). The plea court asked defense counsel whether his client waived his right to cross-examine the mental health evaluators, and defense counsel stated that they did waive that right (App.

---

[3]*State v. Blair*, 273 S.E.2d 536 (S.C. 1981).

18

5).  After reviewing the report, introduced as exhibit 1 at the plea, the plea court concluded that the petitioner was competent and proceeded to the plea (App. 7).

At the outset of the PCR testimony, the petitioner stated that in this claim he was not asserting that he was incompetent at the time of his plea (App. 87).  Instead, he was claiming that in hindsight he wanted to question the state psychiatrist, Dr. Crawford, and others about the effect that drugs and alcohol had on his mental state.  He stated that counsel did not discuss waiving the *Blair* hearing with him (App. 88-89).

Counsel Thornton testified that he discussed the competency evaluation report with the petitioner prior to the plea hearing.  He stated that the report showed that the petitioner was competent.  Counsel had no concerns with the petitioner and stated that based on his interactions with him, the petitioner seemed competent (App.104).  He testified that the petitioner was not the typical defendant in that he was always polite.  In addition, counsel stated that he went to the actual mental evaluation with the petitioner, although he was not in the room with the examiners (App. 106).  Counsel further testified that he had no problems communicating with the petitioner and that he was always attentive and discussed the case with him (App. 101-102).

The PCR court found that the petitioner's testimony was not credible, and his counsel's testimony was credible (App. 140).  The PCR court noted in the oral ruling that "[t]here was nothing here to suggest today from the testimony that there . . . . was not a correct evaluation, not only by professionals but also finding pursuant to *Blair* by the trial court" (App. 113-14).  In the written order, the PCR court found, "counsel was not ineffective for failing to cross-examine the psychologists/psychiatrists.  Applicant elected [not] to go to trial and waived his right to cross-examine any witnesses.  Moreover, counsel testified that he had no problems communicating with Applicant and had no question about his competency" (App. 141).  The PCR court went on to find that the petitioner failed to prove

19

either prong of *Strickland* (App. 141). As discussed below, the PCR court reasonably applied *Strickland* in denying relief.

The test for determining whether a criminal defendant is competent to stand trial is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding - and whether he has a rational as well as a factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960). "In order to find that petitioner's trial counsel was ineffective for refusing to request a *Blair* hearing on petitioner's competency to stand trial, petitioner must show that counsel was deficient and that the deficiency prejudiced the outcome of petitioner's proceedings." *Matthews v. State*, 596 S.E.2d 49, 50-51 (S.C. 2004). In *Matthews*, the South Carolina Supreme Court noted that in proving *Strickland* prejudice in this context, "'the petitioner need only show a reasonable probability that he was either insane at the time [the crime was committed] or incompetent at the time of the plea.'" *Id.* at 51 (quoting *Jeter v. State*, 417 S.E.2d 594, 596 (S.C. 1992)). In the present case, there has been no showing or suggestion of any reasonable probability that the petitioner was not competent at the time of his plea. The petitioner has failed to satisfy his burden of proof, and therefore habeas relief should be denied as to this ground.

### Ground Four

In his fourth assertion of ineffective assistance of counsel, the petitioner claims that counsel failed to seek to quash the indictment because only one witness testified before the grand jury. He claims that this violated state law and required the indictment to be quashed. During the PCR proceedings, defense counsel Thornton stated that he did not see any problem with the indictment (App. 104-105). The indictments list Investigator Lesley Bryant as a witness (App, 144, 146). The PCR court rejected this claim finding:

20

> This Court finds that counsel was not ineffective for failing to move to quash the indictment. The Grand Jury just needs some testimony on which to base its finding. Here, a detective testified before the Grand Jury. This Court finds that the detective's testimony met the requirement for a Grand Jury proceeding. This Court also finds that the solicitor did not amend the indictment when he said on January 30 rather than on or about January 30.

(App. 141).  In the oral order, the PCR court concluded that the proscription against being sole witness before the grand jury was limited to when the solicitor, not an investigating officer, appeared before the grand jury.  The PCR court opined that the particular witness was a valuable grand jury witness because she was involved in the investigation (App. 117-18).

As argued by the respondent, the petitioner's claim fails because it is based upon a misinterpretation of state procedure.  In *State v. Anderson*, 439 S.E.2d 835 (S.C. 1993), the South Carolina Supreme Court prohibited the practice of prosecutors appearing as the sole witness before a grand jury.  Moreover, in *State v. Whitted*, 305 S.E.2d 245, 247 (S.C.1983), *overruled on other grounds by State v. Collins*, 495 S.E.2d 202 (S.C. 1998), the South Carolina Supreme Court held it "did not contemplate and should not be construed to prohibit the investigative officer . . . from appearing as the sole witness before the grand jury."  There is no evidence that the prosecutor was a witness before the grand jury, and since investigators are not prohibited from testifying, this claim fails.

### Ground Five

In his fifth allegation, the petitioner contends that his guilty plea was involuntary because the plea court did not specifically require the petitioner to recite his own understanding of malice aforethought, intent, and all possible sentences.  To be knowing and voluntary, a plea must be entered with a full understanding of the charges and the consequences of the plea. *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969); *Dover v.*

21

*State*, 405 S.E.2d 391, 392 (S.C. 1991). When determining issues relating to guilty pleas, the court will consider the entire record, including the transcript of the guilty plea, and the evidence presented at the post-conviction relief hearing. *Anderson v. State*, 535 S.E.2d 649, 650 (S.C. 2000) (citing *Harres v. Leeke*, 318 S.E.2d 360 (S.C. 1984)).

The PCR court rejected the claim finding that there was no basis to support it. Specifically, the PCR court concluded that the petitioner understood the charges, waived his rights, and was aware that his sentence could be for more than 30 years (App. 118). In the written order, the PCR court cited the appropriate legal standard (App. 139) and found that the petitioner's testimony was not credible, and his counsel's testimony was credible (App. 140). The PCR court then discussed the plea colloquy and found that the petitioner entered his plea freely, voluntarily, knowingly, and intelligently (App. 140).

The record of the plea reflects the court confirmed from counsel Thornton that he had advised the petitioner of the nature of the charges in each indictment and the possible punishments. Counsel confirmed that he believed that the petitioner understood and desired to plead guilty (App. 12-13).[4] The plea court apprised the petitioner, who was under oath, of each indictment. The petitioner confirmed he understood the charges and the possible punishment, including a sentence "up to life" for murder (App. 13-15). He stated that he understood and wished to plead guilty. Furthermore, the petitioner expressly waived his right to remain silent, his right to trial by jury, his right to proof beyond a reasonable doubt, his right to confront the witnesses, and the right to present evidence (App. 15-16). The state's sentencing recommendation was limited to concurrent sentences for both charges (App. 17). The petitioner confirmed that he understood this recommendation (App. 19). He confirmed that other than the recommendation, he had not been promised anything in order to get him to plead guilty (App. 19-20). Counsel again confirmed his advice to the petitioner concerning possible sentences (App. 22-23). After

---

[4] At the PCR hearing, the petitioner's attorney stated that on the date of the plea, he not only covered the possible sentences with his client but also went over the questions that the judge might ask (App. 107).

22

the factual basis was recited onto the record, the petitioner confirmed that his answers were truthful (App. 24-29).

The petitioner has failed to show that the state court decision was an unreasonable determination of the law under *Boykin*. First, as argued by the respondent, there is no requirement for a criminal defendant to articulate his understanding of concepts of malice or intent for a plea to be valid. As noted above, the petitioner averred in open court that he understood the charges and possible punishment. These statements carry a presumption of truth. "Absent clear and convincing evidence to the contrary, [the petitioner] is bound by the representations he made during the plea colloquy." *Walton v. Angelone*, 321 F.3d 442, 462 (4th Cir. 2003) (citation omitted). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel" was deficient. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). As discussed above, plea counsel's advice concerning intent, malice, and murder was not deficient. Similarly, his advice concerning the potential punishment was not deficient as the petitioner was informed that he could be subject to a life sentence for murder.

The petitioner has failed to show the PCR court unreasonably applied United States Supreme Court precedent. Additionally, the petitioner has failed to show by clear and convincing evidence that the PCR court reached an unreasonable factual determination given the evidence and record before the it. Accordingly, this ground should be dismissed with prejudice.

### Ground Six

In his final ground, the petitioner claims that his counsel should have moved to quash the indictment for murder, which stated that "on or about January 30th, 2001" the petitioner committed the crimes (App. 145, 147), because, while giving the factual basis of the plea, the solicitor stated that "a little after two o'clock on January the 30th of 2001,

23

Johnny Green found a cab . . . " (App. 24). Counsel Thornton testified at the PCR hearing that he had no problems with the indictment.  He declared that he did not know what the issue was because the solicitor stated the crimes occurred on January 30, 2001, and the indictment read "on or about January 30, 2001."  He stated that they were on notice of the particular charges (App. 104-105).

The PCR court concluded that here was no error or amendment to the indictment because the dates were encompassed in the "on or about" language (App. 118-19).  In the written order, the PCR court stated, "This court finds that counsel was not ineffective for failing to move to quash the indictment. . . . This court also finds that the solicitor did not amend the indictment when he said on January 30 rather than on or about January 30" (App. 141).

The indictment placed the petitioner on adequate notice of the date of the crimes in Colleton County.  The factual basis discussed the same date.  There was no objection that counsel could have made to the indictment since it was not an amendment. Neither deficient performance nor prejudice were shown, and the PCR court reasonably applied *Strickland*.   Moreover, the petitioner has failed to show by clear and convincing evidence that the PCR court reached an unreasonable factual determination given the evidence and record before the it. Accordingly, this ground is meritless.

To the extent the petitioner is raising a free-standing subject matter jurisdiction claim concerning the indictment, it is not cognizable in a federal habeas setting. Federal habeas is unavailable to retry state issues. *Milton v. Wainwright*, 407 U.S. 371, 377 (1972).  "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1989).

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 23) be granted. The petitioner's motion for an evidentiary hearing (doc. 16) is denied.

s/ Kevin F. McDonald
United States Magistrate Judge

December 7, 2012
Greenville, South Carolina

25

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.